UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KERRI VALLEE,

     Plaintiff,

v.                             Case No:   2:14-cv-569-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Kerri L. Vallee's Complaint (Doc. 1) filed on

September 30, 2014.  Plaintiff seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("SSA") denying her claim for a period of disability,

disability insurance benefits, and supplemental security income.  The Commissioner filed the

Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page

number), and the parties filed legal memoranda in support of their positions.  For the reasons set

out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

## I.     Social Security Act Eligibility, the ALJ Decision, and Standard of Review

### A.     Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment that can be expected to result in

death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

The impairment must be severe, making the claimant unable to do her previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382a(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.      Procedural History

On January 18, 2011, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of January 6, 2008.  (Tr. at 88-91, 175-187).  Plaintiff's applications were denied initially on April 1, 2011, and on reconsideration on July 1, 2011.  (Tr. at 88-91).  A hearing was held before Administrative Law Judge Hortensia Haaversen on January 28, 2013.  (Tr. at 30-87).  The ALJ issued an unfavorable decision on March 8, 2013.  (Tr. at 13-27).  The ALJ found Plaintiff not to be under a disability from January 6, 2008 through the date of the decision.  (Tr. at 24).

On July 30, 2014, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-5).  Plaintiff filed a Complaint (Doc. 1) in the United States District Court on September 30, 2014.  This case is ripe for review.  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 17).

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2013.  (Tr. at 14).  At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 6, 2008, the alleged onset date.  (Tr. at 14).  At step two, the ALJ found that Plaintiff suffered from the following severe impairments:  status post cervical fusion in January 2011 with removal of interbody fusion device at C5-C6; and "replace anterior locking plate in February 2011."  (Tr. at 14).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  (Tr. at 16).  At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a light work except that Plaintiff:

> can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; she can stand or walk for six hours in an eight-hour workday; she can sit for about six hours in an eight-hour workday; she can do occasional overhead reaching; and she must avoid concentrated exposure to hazards such as machinery and heights. (Based on the June 9, 2011 assessment of State agency medical consultant John Rinde, M.D., at Exhibit 14F for the post-operative period of one year post-surgical procedure; it is noted that thereafter, the claimant's condition was supposed to completely resolve.)

(Tr. at 16).  The ALJ determined that Plaintiff has no past relevant work.  (Tr. at 22).  The ALJ considered Plaintiff's age, education, work experience and RFC to determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. at 22-23).  The ALJ found that Plaintiff could perform the following jobs:

1)   Production assembler, DOT No. 706.687-010, light exertional level, SVP 2.[2]

2)   Office administration, DOT No. 208.685-010, light exertional level, SVP 2.

3)   Sales attendant, DOT No. 299.677-010, light exertional level, SVP 2.

(Tr. at 23).  The ALJ concluded that Plaintiff was not under a disability from January 6, 2008, through the date of the decision.  (Tr. at 24).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[2]      "DOT" refers to the *Dictionary of Occupational Titles*, and "SVP" refers to the Specific Vocational Preparation Code.

even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.      Analysis

On appeal, Plaintiff argues that the ALJ erred in failing to find that Plaintiff had limitations in her ability to handle and reach in all directions. Plaintiff argues that the ALJ erred in affording great weight to John Rinde, M.D.'s opinion. Additionally, Plaintiff argues that the ALJ erred in giving little weight to the limitations found by Dr. Hyppolite in his opinion. The Commissioner responds that the ALJ properly considered the medical evidence of record and did not err in determining Plaintiff's RFC.

### A.  Weight of Physicians' Opinions

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and, based on that determination, decide whether the plaintiff is able to return to her previous work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age, education, and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

"The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citation omitted).  The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id*. (citing *Cowart v. Shweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians unless 'good cause' is shown."  *Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5); and *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  A doctor's opinion may be discredited when it is contrary to or unsupported by the evidence of record, or the opinion is inconsistent with the doctor's own medical records.  *Id*. (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)). "Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by substantial evidence, there is no reversible error."  *Id*. (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)).

### B.  Dr. Rinde

John Rinde, M.D. rendered an opinion as to Plaintiff's residual functional capacity on June 9, 2011.  Based on the date of his opinion, Plaintiff argues that Dr. Rinde did not have comprehensive medical information from all of Plaintiff's treating physicians, some of which was completed near or after the June 9, 2011 date.  Specifically, Plaintiff contends that more recent medical reports contain information concerning numbness in her right upper extremity, and numbness in the first and second digits of her right hand.

Dr. Rinde was a State Agency medical consultant who was a non-treating, non-examining physician.  (Tr. at 438-45).  Dr. Rinde completed a Physical Residual Functional Capacity Assessment on June 9, 2011.  (Tr. at 438-445).  Dr. Rinde determined that Plaintiff was able to: lift and/or carry 20 pounds frequently and 10 pounds occasionally; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and push and/or pull unlimited as to hand and/or foot controls.  (Tr. at 439).  Dr. Rinde reviewed Plaintiff's medical history, noting that Plaintiff had two surgical procedures on her back in January 2011 and February 2011.  (Tr. at 439).  Dr. Rinde noted that the May 13, 2011 physical exam by the neurosurgeon showed a limited range of motion of the neck and loss of strength in the right deltoid at 4+/5 and some numbness in the right hand, particularly in the right index finger.  (Tr. at 439-40).  Dr. Rinde noted that physical therapy was recommended and Plaintiff was expected to make a full recovery within a year from the surgical procedure.  (Tr. at 440).  Dr. Rinde found no postural limitations; found Plaintiff was limited in reaching in all directions, but found no other manipulative limitations; found no visual limitations; found no communicative limitations; and found Plaintiff should avoid concentrated exposure to hazards such as machinery and heights, but found no other environmental limitations.  (Tr. at 441-42).  Dr. Rinde determined that Plaintiff should

avoid hazards due to her limited cervical range of motion.  Dr. Rinde found that Plaintiff's allegations were credible in the immediate post-operative period, but reiterated that Plaintiff's limitations were to resolve within one year from the date of the surgical procedure.  (Tr. at 443).

The ALJ afforded great weight to the opinion of Dr. Rinde.  (Tr. at 20).  The ALJ noted that Dr. Rinde found Plaintiff able to perform a range of light work with manipulative and environmental limitations similar to those noted in Plaintiff's RFC determination.  (Tr. at 20). The ALJ found Dr. Rinde's opinion supported by the treatment records.  The ALJ then discusses the physical examinations throughout the record that show that Plaintiff has a slightly decreased strength in the right upper extremity and full strength of 5/5 otherwise in the bilateral upper extremities.  (Tr. at 20).  The ALJ noted that Dr. Rinde's opinion is based upon a complete review of the record, and found that his opinion was supported by and consistent with the medical evidence of record.  (Tr. at 20).  The ALJ also referred to Dr. Rinde's statement that the level of limitation was to last until one year post-surgical procedure and after that, Plaintiff was expected to make a full recovery.  (Tr. at 21).

The ALJ carefully reviewed Dr. Rinde's opinion.  She found that Dr. Rinde's opinion was consistent with the medical records.  The ALJ specifically referred to prior physical examinations throughout the record, which supported Dr. Rinde's findings.  The ALJ showed good cause to afford great weight to Dr. Rinde's opinion, as a non-examining, non-treating physician.

Next, Plaintiff argues that the ALJ erred in affording Dr. Rinde's opinion great weight because it was completed on June 9, 2011, which was prior to some of the medical evidence of record.  Plaintiff argues that Dr. Rinde did not consider this new medical evidence, which contradicts his findings.  Thus, Plaintiff contends the ALJ should not have afforded Dr. Rinde's

opinion great weight as it was not a complete review of the record.  Specifically, Plaintiff argues that Dr. Rinde did not have the benefit of Pierre R. Hyppolite, M.D.'s records when rendering his opinion on June 9, 2011.[3]

The Court recognizes that Dr. Rinde did not have access to all of the medical records, including those of Dr. Hyppolite, because some were dated near or after the date Dr. Rinde completed the Physical Residual Functional Capacity Assessment.  (Tr. at 438-45).  However, the ALJ carefully reviewed all of the medical records and opinions, whether completed before or after Dr. Rinde's opinion.  (Tr. at 19-20).  The ALJ decided to afford Dr. Hyppolite's opinion of January 25, 2013 little weight and supported this decision by finding that his opinion was not consistent with the evidence of record, including Dr. Hyppolite's own treatment notes.  Even though Dr. Rinde was not aware of Dr. Hyppolite's records near or after June 2011, the ALJ was aware of these records and evaluated them in combination with the other evidence of record to conclude that Dr. Rinde's opinion was consistent with the medical evidence in the record. Therefore, the Court finds that the ALJ did not err in affording great weight to the opinion of Dr. Rinde even though Dr. Rinde did not have the benefit of medical records near or after his June 9, 2011 opinion.

## C.  Dr. Hyppolite

Plaintiff argues that the ALJ erred in affording little weight to the opinion of Dr. Hyppolite, Plaintiff's treating physician.  Plaintiff claims that Dr. Hyppolite reported Plaintiff's complaints of pain, including radiating pain to her right arm with associated numbness and tingling.  Plaintiff argues that when Dr. Hyppolite completed a residual functional capacity

---

[3] Dr. Hyppolite's records and opinions will be discussed in more detail in the next section.

questionnaire he found Plaintiff to be more limited than the ALJ determined in Plaintiff's RFC.

Plaintiff argues that by discounting Dr. Hyppolite's opinion, the ALJ substituted her opinion for

that of an expert medical opinion. The Commissioner asserts that the ALJ carefully reviewed

Dr. Hyppolite's records and determined that his opinion was to be afforded little weight as it

conflicts with his own treatment records and with the other medical evidence of record.

The Court will focus on medical records from Dr. Hyppolite concerning Plaintiff's arms,

hands, and fingers. On August 23, 2011, Plaintiff visited Dr. Hyppolite. (Tr. at 594). Dr.

Hyppolite found Plaintiff's right biceps, deltoids to have 4/5 strength, with full passive range of

motion. (Tr. p. 594). Dr. Hyppolite's impression was status post removal and replacement of

anterior cervical locking plate at C4-5 and C5-6. (Tr. at 594). Dr. Hyppolite prescribed MS

Contin for pain control, Percocet for breakthrough pain, and Valium for muscle spasms. (Tr. at

594). Dr. Hyppolite found Plaintiff to have chronic intractable pain with a legitimate medical

diagnosis. (Tr. at 594). Dr. Hyppolite determined that Plaintiff failed other conservative

measures including non-opiate medications, adjuvant therapy, interventional pain assessment,

and physical therapy. (Tr. at 594). Dr. Hyppolite determined that the pain medication may need

to be continued indefinitely. (Tr. at 594).

On September 23, 2011, Plaintiff saw Dr. Hyppolite who changed her medications and

recommended physical therapy, but Plaintiff declined physical therapy. (Tr. at 591). On January

25, 2012, Plaintiff saw Dr. Hyppolite and her examination revealed her right deltoid strength was

3+/5 and right bicep strength was 4/5. (Tr. p. 585). On February 20, 2012, Plaintiff's strength

was 5/5 with the exception of her right hand grip which was 4/5. (Tr. at 583). On June 11, 2012,

Dr. Hyppolite reported that Plaintiff is able to perform all activities of daily living. (Tr. at 578).

On August 6, 2012, Plaintiff reported no side effects from her medication, and that she started

doing yoga, which has helped her.  (Tr. at 576).  On December 26, 2012, Plaintiff reported that she had no side effects from her medication but that her current pain regimen was not providing adequate pain control.  (Tr. at 572).

On January 25, 2013, Dr. Hyppolite completed a Residual Functional Capacity Questionnaire.  (Tr. at 641-642).  Dr. Hyppolite diagnosed Plaintiff with cervical spondylosis, and three cervical spine surgeries.  (Tr. at 640).  Dr. Hyppolite found Plaintiff's prognosis to be fair and having symptoms of pain with numbness and tingling bilaterally in her hands.  (Tr. at 640).  Dr. Hyppolite reported that Plaintiff had decreased upper extremity strength and bilateral hand strength.  (Tr. at 640).  Dr. Hyppolite found these symptoms to be continual, and included dizziness and drowsiness as side effects of her medication.  (Tr. at 640).  Dr. Hyppolite also found Plaintiff limitations to be as follows:  Plaintiff could sit for 20 minutes, and stand for 15 minutes; Plaintiff would need to sit in a recliner or lie down for 2 hours per day; Plaintiff could sit, stand and walk for less than 1 hour in an 8-hour workday; Plaintiff would need the use of an assistive device when standing or walking; Plaintiff's condition would be aggravated with increased physical activity; Plaintiff would need a job where position changes are possible; and Plaintiff would need unscheduled breaks every hour for 15 to 20 minutes.  (Tr. at 640).  Dr. Hyppolite limited Plaintiff to lifting 10 pounds occasionally and never lifting more than 10 pounds.  (Tr. at 640-41).  Dr. Hyppolite found Plaintiff to have significant limitations in repetitive reaching, handling, or fingering finding that Plaintiff could reach with her arms, grasp with her hands, and complete fine manipulation with her fingers on her right and left side only 10% of the time in an 8-hour workday.  (Tr. at 641).  Dr. Hyppolite found Plaintiff could climb stairs 1% of the time during an 8-hour workday, but could never stoop, crouch, or kneel.  (Tr. p. 641).  Dr. Hyppolite found Plaintiff's productivity level to be 75% of that of a healthy person.

(Tr. at 641).  Dr. Hyppolite found that plaintiff would be absent from work 4 times per month. (Tr. at 642).

The ALJ carefully reviewed Dr. Hyppolite's records and his opinions.  (Tr. at 19-22). The ALJ reviewed Plaintiff's visits to Dr. Hyppolite, noting that Dr. Hyppolite found Plaintiff to have good pain control and was able to perform all activities of daily living on her June 11, 2012 visit.  (Tr. at 19).  The ALJ reviewed and specifically mentioned Plaintiff's September 27, 2011, October 31, 2011, January 25, 2012, February 20, 2012, April 16, 2012, June , 2012, August 6, 2012, and December 26, 2012 visits to Dr. Hyppolite.  (Tr. p. 19-20).

Even though the opinions of treating or examining physicians may be entitled to great weight, an ALJ may discredit that opinion if it is contrary to or unsupported by the medical evidence in the record or inconsistent with the doctor's own medical records.  *See Poellnitz v. Astrue*, 349 F. App'x 500, 502 (11th Cir. 2009).  To discredit an examining or treating physician, an ALJ must articulate specific reasons for failing to accord this doctor great weight.  *Id*.  After her exhaustive review of Dr. Hyppolite's records and opinions and an equally careful review of the other medical evidence in the record, the ALJ concluded that Dr. Hyppolite's opinions as to Plaintiff's limitations were entitled to little weight.  (Tr. at 20-22).  The ALJ noted the limitations set forth by Dr. Hyppolite, and then determined that these severe limitations were not supported by the record, including Dr. Hyppolite's own treatment notes.  (Tr. at 22).  The ALJ gave the example that on December 26, 2012, Dr. Hyppolite noted that Plaintiff had 5/5 strength bilateral in her upper extremities, except for a right hand grip of 4/5 and full passive range of motion in her upper extremities.  (Tr. p. 22).  Because Plaintiff failed to exhibit the extreme limitations found by Dr. Hyppolite in his medical source statement, the ALJ concluded that his opinion was not supported by the medical records.

The ALJ carefully reviewed all of the medical records in detail.  The ALJ considered Dr. Hyppolite's records and specifically mentioned many of Plaintiff's visits to Dr. Hyppolite.  The ALJ articulated specific reasons for not following Dr. Hyppolite's severe limitations in devising the RFC for Plaintiff.  The ALJ found that Dr. Hyppolite's treatment records did not support the severe limitations that Dr. Hyppolite included in his Residual Functional Capacity Questionnaire, and the other medical records also did not support these severe limitations.  The ALJ did not substitute her opinion for that of a medical expert, but rather considered all of the medical evidence of record and determined that the limitations listed in Dr. Hyppolite's Residual Functional Capacity Questionnaire were not supported by the medical record or Dr. Hyppolite's own treatment records, citing to specific instances when the medical treatment records conflicted with the severe limitations found in Dr. Hyppolite's Questionnaire.  The ALJ did limit Plaintiff's RFC to occasional overhead reaching, but did not include any other limitation found by Dr. Hyppolite as to her ability to handle and reach.  The Court finds that the ALJ articulated specific reasons for not adopting Dr. Hyppolite's limitations.  The Court concludes that the ALJ did not err in failing to find that Plaintiff had additional limitations in her ability to handle and reach in all directions beyond those articulated in Plaintiff's RFC.

### III.    Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. §405(g).  The Clerk is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December 30, 2015.


_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Counsel of Record
Unrepresented Parties